IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION NO. 25-430 |
| MAHMUD SHEPPARD | |

**Pappert, J.**                                                                                   **December 22, 2025**

## MEMORANDUM

Mahmud Sheppard was charged by a grand jury with possession of methamphetamine with intent to distribute. Magistrate Judge Arteaga ordered Sheppard's detention pending trial, and Sheppard now appeals that decision and moves for pretrial release. The Court held a hearing on December 15, 2025, and for the reasons that follow denies his Motion.

I

On February 4, 2025, Philadelphia Police Department officers noticed Sheppard walking on the 2900 block of North 29th Street. When the officers approached him, Sheppard fled through a residential neighborhood. While doing so, he threw a bulk package containing nearly a pound of methamphetamine on the sidewalk. The officers eventually caught him on foot and, during the search incident to his arrest, recovered $5,895.00 from Sheppard's jacket. He was charged locally with drug trafficking offenses and released after posting bail. *See* (Gov't's Resp. in Opp'n at 3–4, Dkt. No. 14.)

In September of 2025, Sheppard was indicted by the federal grand jury and charged with possession with intent to distribute fifty grams or more of a substance

containing methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). (Indictment, Dkt. No. 1.) A pretrial services report recommended his conditional release, but described him as presenting an "elevated risk of danger to the community." (Dkt. No. 12-1 at 3.) At Sheppard's October detention hearing, Judge Arteaga found "by clear and convincing evidence, and by a preponderance of the evidence, that the safety of the community cannot be protected if [Sheppard] were released or that [Sheppard] would show up to court if he were released, even on conditions." (Tr. of Detention Hr'g at 22:23–23:2, Dkt. No. 15.)

II

The Bail Reform Act governs pretrial detention. A rebuttable presumption in favor of pretrial detention arises in certain circumstances:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed [] an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.

18 U.S.C. § 3142(e)(3). As currently charged, Sheppard faces a mandatory minimum of five and a maximum of forty years' imprisonment. 21 U.S.C. § 841(b)(1)(B); (Indictment Information Sheet at 3, Dkt. No. 1-3). There is probable cause to believe Sheppard violated 21 U.S.C. § 841(a)(1) because of the grand jury's indictment and the facts proffered by the government. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) (holding that an indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption). The Court must presume "that no condition or combination of conditions will reasonably assure [Sheppard's] appearance as required and the safety of the community" if he were released. 18 U.S.C. § 3142(e).

Once this presumption arises, the burden shifts to Sheppard to "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam). Section 3142(g) of the Bail Reform Act provides factors the Court must review to determine if Sheppard has satisfied that burden:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including-
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person in the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"The quantum of evidence required to rebut the presumption is not high. Rather, the defendant need only come forth with credible evidence conflicting the presumption." *United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D. Pa. 2007); *see also Carbone*, 793 F.2d at 560. Even if a defendant rebuts the presumption of dangerousness or flight, however, the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the Court. *See, e.g., Carbone*, 793 F.2d at 560–61. To order pretrial detention once the presumption has

been rebutted, the Court must find by a preponderance of evidence that no conditions can reasonably assure the defendant's appearance at trial or by clear and convincing evidence that no combination of conditions will reasonably assure the safety of the community. *United States v. Perry*, 788 F.2d 100, 106 (3d Cir. 1986); *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Court reviews the factors and makes this determination *de novo*. *United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir. 1985).

### III

The first § 3142(g) factor, the nature and circumstances of the offense, weigh in favor of Sheppard's detention. Congress considers drug crimes with a maximum penalty of more than ten years' imprisonment so serious that it has imposed an evidentiary burden on persons seeking pretrial release. *See United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985). If Sheppard is convicted of trafficking methamphetamine, he faces a maximum sentence of forty years' imprisonment. (Indictment Information Sheet at 3.) The serious nature of Sheppard's charged offense favors his detention.

The weight of the evidence, the second factor, also favors Sheppard's continued detention. Sheppard fled on foot when Philadelphia Police officers approached him. While running he threw a bulk package of methamphetamine to the ground. He had almost $6,000.00 in his jacket. (Tr. of Pretrial Detention Hr'g at 40:4–41:3, Dkt. No. 24.) Sheppard's counsel suggested at the hearing that he may move to suppress this evidence based on what he has seen in other cases. (*Id.* at 11:1, 19:13–16.) But the government proffers that the arresting officers' body worn camera footage documents "everything," including the arrest and Sheppard's attempted disposal of

methamphetamine, (*id.* at 47:17–20), and argues that concerns about officer arrest tactics in *other* cases are unsupported by the video evidence in *this* case, (*id.* at 39:23–40:21). And in any event, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information" at a pretrial detention hearing. 18 U.S.C. § 3142(f).

The third factor, Sheppard's personal history and characteristics, also warrant his continued detention. Sheppard has provided conflicting information about where he lives or plans to live if he is released. (Tr. of Pretrial Detention Hr'g at 46:6–16.) After he was arrested in February, Sheppard told state pretrial services that he lived at 4800 Kelly Street. He reported to federal pretrial services that he lives at 965 Pratt Street in Philadelphia, his mother's home. He later told pretrial services that he lives with his girlfriend at 4300 Kelly Drive. (Gov't's Resp. in Opp'n at 10–11.) His girlfriend, Casey Devlin, testified that if he is released, Sheppard could live with her, her mother and her grandmother at her grandmother's home on Hellerman Street in Philadelphia. (Tr. of Pretrial Detention Hr'g at 35:13–16.) But Ms. Devlin doesn't live there yet, she plans to move back in with her grandmother after her current lease expires on January 4, 2025. (*Id.* at 32:21–25.) Ms. Devlin is supportive of Sheppard, has steady, gainful employment, (*id.* at 32:6–17), and apparently maintains a stable relationship with her mother and grandmother. But none of these circumstances assure the Court that Sheppard will appear for trial. Based on his various and inconsistent representations, the Court cannot state with any confidence where Sheppard might live if released.

Sheppard has no verifiable employment. He told authorities that he works for a construction company or a painting business. But he has nothing to evidence any

income and cannot even identify the companies for whom he allegedly worked. (*Id.* at 46:18–47:9.) Moreover, Sheppard's mother says he has no history of employment, (Pretrial Services Report at 2, Dkt. No. 12-1), and the Pennsylvania Labor Board has no record of any employment history for him, (Tr. of Pretrial Detention Hr'g at 47:3–5).

Sheppard argues that his flight risk is low because he may be eligible for relief under a sentencing "safety valve" provision. (*Id.* at 44:25–45:1); 18 U.S.C. § 3553(f) (allowing courts to sentence a defendant, under specific circumstances, without regard to an otherwise applicable mandatory minimum sentence). But the government is confident that Sheppard will not qualify for sentencing relief. (Tr. of Pretrial Detention Hr'g at 44:9–14.) And Sheppard knows his sentencing exposure will soon increase—to a minimum of ten years' imprisonment and a maximum of life in prison—given the government's representation that the methamphetamine he possessed was recently analyzed and determined to be pure. (*Id.* at 17:10–12.)

Sheppard also learned at the hearing that a superseding indictment is likely forthcoming, implicating him in a broader methamphetamine trafficking scheme based on conduct revealed by law enforcement while out on state court bail for his arrest in this case. (*Id.* at 41:4–42:11.) Such a possibility of trouble on a grander scale gives Sheppard an even greater incentive to flee. *See United States v. Mandarakas*, No. CR 24-20024, 2024 WL 2797092 at *5 (E.D. Mich. May 31, 2024), *aff'd*, No. 24-1546, 2024 WL 4370728 (6th Cir. Sept. 10, 2024); *see also United States v. Gaston*, No. 2:21-CR-36, 2021 WL 1170201 (N.D. Ind. Mar. 26, 2021) ("[M]ultiple district courts in several jurisdictions have noted that uncharged conduct may be considered during a detention hearing, though it should be afforded less weight in evaluating whether a defendant

poses a danger to the community."). Sheppard's knowledge that he very well may face more severe consequences outweighs the comfort he may take in potential "safety valve" sentencing relief. Sheppard is a flight risk and may, in light of the lengthy prison term he already faces, not show up for his trial.

The fourth factor, too, favors Sheppard's continued detention. He poses a danger to the community because of the likelihood that he will traffic illicit drugs if he is released. *See Perry*, 788 F.2d at 111 (danger to the community arises from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses); *cf. United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985) (statutory language unequivocally establishes that Congress intended to equate trafficking drugs with a danger to the community).

Sheppard cannot overcome the presumption in favor of his pretrial detention. And, even if he had, the government has shown by a preponderance of the evidence that no conditions can reasonably assure his appearance at trial and by clear and convincing evidence that no conditions will reasonably assure the safety of the community if he is released.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.